Adam Clark, call the next case. Case number 14-2665, Aspreces University of Chicago. Good morning. My name is Anthony Longo, L-O-N-G-O. From the law firm of Cassidy Shaddy, I represent the defendant petitioner, University of Chicago Hospitals. The issue before this court today is the certified question from the trial court. That question is whether a defendant hospital is immune from vicarious liability under the EMS Act for the allegedly negligent medical services rendered by its certified flight physician after he arrives at the transferring hospital, assumes care, and transports the patient to another hospital. We suggest that the answer to that question should be in the affirmative, that, yes, there is immunity for two reasons. The first reason is that immunity is conferred in this situation by Section 3.150A of the EMS Act. Alternatively, the answer to the certified question should be in the affirmative because immunity is commanded by Section 3.150B of the Immunity Act. Turning first to Section A, or what I'll refer to as A immunity, the plain language of that section supports answering the certified question in the affirmative. However, before I specifically turn to the language, I just want to emphasize that on three occasions in front of the Illinois Supreme Court, that court has interpreted either Section A or its predecessor, Section A, and has confirmed that that language is clear and that that language is broad and has specifically rejected attempts by plaintiffs to narrow the scope of Section A. Turning now to Section A, it begins with any person. The certified flight physician in this case is certainly any person. The legislature, in drafting that, specifically meant to keep the class of potential defendants broad who can take advantage of the immunity. You can notice in Section A that the legislature did not list any specific trades or professions there, nor did they exclude any. They felt comfortable with any person. Now, of course, immediately following any person, you can see that they narrow or that they further define what person would be entitled to immunity, and they do so by giving us a series of verbs. And those verbs, the crucial verbs, are certified, licensed, or authorized pursuant to this Act. You are relying on the fact that the physician was, and it's throughout your brief, a certified flight physician. Correct. Certified under this Act, or how does you don't cite to anything statutory to tell me how this certification took place. That's my first question. My first, okay. And second question is, was this doctor acting as a certified flight physician? Okay. In this instance. The answer to your first question is that we do not rely upon the adjective certified flight physician to suggest that he's certified under the Act. A certified flight physician is a physician who undergoes specific training with UCAN, the University of Chicago Air Medical Network. And that network, or that program, or that apparatus is specifically licensed into UCH's EMS system plan. All right? And that's what the University of Chicago calls them, certified flight physicians. So I don't mean to suggest to you that immunity is conferred upon this gentleman or his conduct because we call them certified. All right? That wasn't the intent. Your second question is, was he acting as a certified flight physician? Absolutely. The record in this case is uncontradicted and demonstrates that on the day in question, Dr. Ira Blumen, who is the medical director of UCAN, the University of Chicago's Air Medical Network, and also acting as designee of UCH's EMS medical director, specifically authorized the participation of Dr. Strain as a certified flight physician and Nurse Campbell as a certified flight nurse to go on this emergency transport to Providence. So I guess I would close in responding to you, Your Honor, is that the key verbs that trigger immunity for this certified flight physician is not the adjective certified. It is the fact that he was licensed or authorized pursuant to the act. The reason why we feel that he is licensed or authorized pursuant to the act, we can get to that answer in two ways. If we look at it from a broad picture, and if we take a step back and look at exactly what the University of Chicago Hospitals does here, it's obvious that Dr. Strain was licensed or authorized pursuant to the act. Let me stress a few things. The University of Chicago Hospitals is one of very few EMS resource hospitals. That is a very narrow distinction that they achieved pursuant to Section 3.35 of the act. Their participation in that EMS system as an EMS resource hospital is pursuant to what's referred to in the act as an EMS system and regional plan pursuant to Sections 3.25 and 3.3 of the act. What the undisputed record shows, and I believe it's specifically page 601 of the record, shows, and it's uncontradicted, that the design of the EMS system and regional plan specifically licensed UCAN into that plan. So this apparatus known as UCAN is specifically licensed into that plan. UCAN is nothing other than a program made up by certified flight physicians and certified flight nurses. And so by virtue of the fact that Dr. Strain was a trained member of UCAN, an apparatus that's already licensed into the system and was licensed into the system... First of all, what is the difference between what Dr. Strain did once he arrived at the University of Chicago Hospital than any other emergency physician would have done in an emergency room receiving that patient? Well, the difference is remarkably vast. If we look at the record, and specifically pages 231 and 237, Dr. Strain explains what he did immediately after rushing within minutes in an ambulance to Providence Hospital. He rushes in there, and when he arrives, he assesses the patient. He looks at the vitals, looks at the medications, and immediately disconnects the boy from a ventilator. You say that your issue, your first issue, was whether the hospital was immune by virtue of the services rendered by the physician after he arrived at the hospital. Correct. The hospital meaning Providence or University of Chicago. Meaning Providence. And the certified question, I think, doesn't contemplate necessarily three spheres of time. There's not something that a certified flight physician does after he arrives, separate and apart from what he does when he assumes care, separate and apart from the transfer. He is a quintessential transfer physician. He is running into the room, making an assessment of the patient, and immediately disconnecting him from the machines, immediately putting him on the gurney, immediately engaging in manual ventilation of this boy to keep him breathing, in order to get him to point B, to get him from a dangerous situation to hopefully a situation of safety. And that is not what an emergency room doctor does, a true quintessential emergency room doctor. A true quintessential emergency room doctor doesn't have to necessarily run from one hospital to another. In fact, he never does. Or she never does. They're in the emergency room, certainly handling tough cases, or what would be called emergency cases. But that quintessential ER physician is not, at a moment's notice, jumping in a helicopter, perhaps in poor weather, or even in great weather. That physician is absolutely not jumping into an ambulance and running to save somebody. That physician, that quintessential ER physician is protected from the inclement weather outside of the hospital. He doesn't have to deal with potholes in the road. He doesn't have to deal with traffic. He doesn't have to deal with the sounds and sirens and the deafening. I mean, in the previous argument, I was sitting in the gallery, and an ambulance came by. I could barely think. Dr. Strain, as a certified flight physician, every certified flight physician as part of UCAN, that's the situation under which they practice. And this is the exact situation that I think this court so eloquently said in Gleason versus Peoria. Emergency situations are often fraught with tension, confusion, and as here, difficult physical locations for giving medical care. Emergency personnel must not be afraid to do whatever they can under less than ideal circumstances. And so I understand that that's plaintiff's theme, that they want this court to believe that what University of Chicago has done, and has been doing for years, pursuant to their EMS system and reasonable plan, is simply sending ER physicians to do ER work at other people's ER rooms. Absolutely not. Dr. Strain, the record shows, arrived at that hospital, immediately assumes care, and immediately starts transferring. I mean, as soon as that boy is moved one inch from that bed towards the gurney, towards the door, transport is underway. And so that's the big picture view. If the court wants to look at University of Chicago Hospitals' membership in this very small select group of hospitals as an EMS resource hospital, and look at its EMS system plan, and the fact that UCAN was specifically licensed into the plan, and that UCAN is only made up of certified flight physicians, and certified flight nurses, well then we suggest that the conclusion immediately follows, that a certified flight physician is licensed or authorized under this act. The act creates the resource hospital, the act creates the system plan, and that system plan created UCAN. And UCAN rigorously trains certified flight physicians. Let's make this real simple. Was Dr. Strain authorized, pursuant to the act, to do what he did? Absolutely. Absolutely he was. Why was he authorized under the act? There's a few ways he was authorized under the act. In the first instance, as I described, by virtue of his membership into UCAN, a program that's already licensed into the act, he's authorized to do what UCAN trains him to do. That's the first answer. The second answer is a very micro answer, which is where I was moving next in my argument, is that if you push everything aside and look specifically only at the date in question, Provident calls University of Chicago. Well he was authorized because Dr. Blumenthal told him to go. And that's where I was headed, absolutely. There is a specific, there's a level of pre-authorization, and then there's the sub-level. Dr. Blumenthal authorized him to go to Provident to get this patient. In fact, he told him to go. He told him. And was this an emergency? Oh, absolutely. Absolutely it was, and this kind of fits the definition of emergency. So he was a person who was authorized pursuant to the act, and he provided emergency services in an emergency. And it would seem to be under 3.15A that would entitle him to immunity. Yes, his conduct is absolutely immune, and therefore University of Chicago Hospitals, which is being held into this case under a theory of vicarious liability, would obviously be vicariously immune or also immune, because if their agent is free from liability, so must they be. And, you know, our alternative argument, well before I get to the alternative argument, let me remind the court, I suppose I don't need to, but this court will remember the Washington decision. I know Mr. Brennan does, sitting at council table, because he was the lawyer in Washington, and in Washington v. Evanston, this court was confronted with a physician, an obstetrical resident, who was drafted into duty by the University of Chicago. By the EMS director's designee, coincidentally for an EMS resource hospital, St. Francis. And in that case, this court was presented with that series of facts and was confronted with, is this an A immunity situation or a B immunity situation? Now, Dr. Clomkin, in that case, who was the OB resident, was handling her emergency over the telephone at the specific instructions of the EMS medical director's designee. And in that case, this court, you did not give her A immunity. And the reasons for not giving her A immunity are the exact characteristics that Dr. Strain has in this case. But, in addition, this court ended up giving Dr. Clomkin B immunity, because she was supervising, or I'm sorry, instructing EMS personnel over the telephone. And so that was a better fit for that case. And I suggest that Washington is an example of physician immunity under the EMS Act. These physicians are not persona non grata under the EMS Act. They are mentioned everywhere throughout the Act, and they are certainly people, meaning that they're any person. So you would argue that Strain was also immune under B because he was supervising the nurse? Essentially, yes. Essentially, yes. I mean, there's really two B arguments. The first B argument is if you want to look at the name. But he's not being charged with negligence for his instruction of the nurse? He certainly isn't, Your Honor. And you'll notice from the record that at a certain point in this litigation, plaintiffs decided to make judicial admissions during contested hearings. They want to keep the nurse out of the picture of this court's discussion, because they hope that if they cut out the nurse, who is, of course, a PHRN, who is certainly EMS personnel, that they can somehow carve this case into one of regular old physician liability, which they then lead to the argument we don't give physicians. But essentially, Justice Hoffman, yes. The record will show, Dr. Strain's deposition testimony and the nurse's deposition testimony, that they are a transfer team in the most true sense of the word. They're there. They don't have the luxury of being in an emergency room. Please hand me this scalpel. Please go talk to this person. Please call this counsel. They are both struggling as a team under these difficult circumstances, and they're sharing responsibilities. Both Strain and Campbell manually ventilated this boy. Both of them carried the gurney. Both of them ran out to the ambulance. Both of them jumped into the ambulance. And both of them raced to UCH and then ultimately up to that PICU where this boy needed to be. So yes, he was supervising her, clearly. I see that I'm out of time, and so... You are. I'm prepared to... We'll give you five minutes and rebuttal. Thank you, Justice. Good morning. My name is Constance Dukes. I'm from Kralovic Jamboree and Shorts. I represent the plaintiff, I believe, in the case. Justices, I believe what's important in this case is the purpose of the EMS Act's immunity provision. It's clear, and in simple terms, it is to prevent EMS personnel from civil liability when they are rendering emergency and non-emergency care to patients. And this is because, as counsel pointed out, these emergency situations are difficult, and they are sometimes required to make split-second decisions. Your Honors, excuse me, Justices, Dr. Strain was an emergency room physician at the time he was called or paged by Dr. Blumen to go to Provident. Dr. Strain was in the emergency room, and he was informed of Donnell's condition at Provident by Dr. Blumen. Dr. Strain was acting as an emergency room physician when he went to Provident and provided care and treatment to Donnell. As outlined in our brief, Justices, the legislature did not intend to provide immunity to the emergency room physician. The legislature does not exclude them, and it could very well have done so, had they chosen to. So why are you saying that the physician would be excluded? Justices, in the case law, there is no case law where a physician such as Dr. Strain has been excluded from liability. I look to subsection C of the immunity provision. In Washington, the doctor was excluded. I understand, Your Honors. In Washington, however, the doctor was not performing emergency medical treatment to the patient, as the doctor was in this situation. Well, can I ask a question? Why would a doctor from the University of Chicago go to Provident Hospital? For what reason? The University of Chicago doesn't own Provident Hospital. There's no allegation that they do. What's he doing at Provident Hospital? Dr. Blumen paged Dr. Strain. And who was Dr. Blumen? Dr. Blumen is the med control physician. And he was the acting what? The acting medical director. Of what? Of UCAN. However, Your Honor, I believe there's a difference between this case and the cases that the courts have decided on in the past. The physicians in those cases were never providing medical treatment to those patients. They were all either supervising or instructing EMS personnel as defined by the act. So your theory is the legislature only intended to immunize ambulance drivers and nurses, but not doctors? Is that your theory? No, Your Honor. My theory is that the legislature immunized EMS personnel as defined by the act. Which does not only include... EMS personnel includes emergency medical responders, first responders, emergency medical dispatchers, emergency medical technicians, paramedics, emergency communications registered nurses, and pre-hospital registered nurses. And is the EMS medical director EMS personnel? Yes, Your Honor. No, Your Honor. He's not? He's not an EMS personnel. He's the medical director. That's a separate... Well, he's the EMS medical director. Beck was the EMS medical director for the entire region, was he not? And he was responsible for administering the EMS system plan approved by the department? Yes, Your Honor. I do not disagree that medical directors are immune from liability pursuant to the EMS... No, we're not talking about the medical director. I just want to find out if Beck was, as EMS medical director, and responsible for administering the EMS system, EMS personnel. I'm sorry, Your Honor. Are you speaking of Dr. Blumen? No, I'm talking about Dr. Beck. Dr. Beck was the named UCH physician who served as the EMS medical director. But he then authorized Dr. Blumen or Dr. Beck to be the acting EMS director in his absence. I apologize. And he was absent on the day of this event. And so we're in agreement then that the medical director is EMS and authorized to administer the plan? Yes, Your Honor. And he administered the plan and Dr. Blumen, who was the acting director, ordered Dr. Strange to go to Provident Hospital. And why did he order him to go there? For what purpose? To provide medical treatment to Don L. Weems. To transport him to the University of Chicago Hospital because Provident couldn't care for him. And they had to get him to a specific unit, the PICU, I guess the Pediatric Intensive Care Unit? Yes. And he had to be transported. And Dr. Blumen said, Dr. Strange, you've got to go too. You've got to go with. And so isn't he any person who was authorized, pursuant to the act, to provide emergency medical services during an emergency? Yes, Justice. However, as I've said... I guess the case he's immune under A, because I was just reading from A. I believe that other parts of the statute, if read in conjunction with Section A, shed light on what the legislature intended when they said any person. I don't believe that any person would include an ER physician who is held to a completely different standard of care than a nurse or an EMS personnel. Broadening the scope of immunity in this case and in future cases to include emergency physicians who are on ambulances, or provide care in the transporting hospital, as well as on the ambulance, and then subsequent to the transport, including at their own hospital, would be disastrous. It would lessen the standard of care that is required for emergency room physicians. Any hospital from now on could just send their emergency room physicians on ambulances, have them medically treat the patients at the transporting hospital, and then they would be immune from negligence. Well, it would only be if the EMS director authorized a transfer. I mean, they can't just go running around sending ambulances anywhere. This has to be an act under the EMS plan. And so we've got the director of the EMS plan saying, transport this child and bring him to the University of Chicago where we've got a pediatric intensive care unit. Isn't that what this whole EMS system is all about? Getting these ill people to hospitals that are capable of taking care of them, and when they come out of hospitals that don't have the facility? I agree. It also requires that the patients during the transport are being treated appropriately and within the standard of care of that medical provider. So if it's a nurse or an EMS... Then your argument would be there would be no immunity for nurses either. Because if the nurse violated their standard of care during the course of the transport, there would be no coverage. If a paramedic violated their standard of care, there would be no coverage, there would be no immunity. And that simply isn't what this act is about. I agree. It's not that, Your Honor. So why is the doctor different? EMS personnel are defined, as I stated before, to include nurses. So they would be authorized to act as they are authorized in the act itself. It states the scope of their practice and what they're authorized to do. Physicians are not included in that. They don't have, in the definitions portion of the act, they don't have physicians included as EMS personnel or even any person who would be included and provided immunity in this situation. All of the cases that have been cited have stated the primary purpose of the immunity provision to encourage emergency medical response without the threat of malpractice liability for every bad outcome or unfortunate occurrence. When rendering medical assistance in emergency situations, medical personnel should not be afraid to do whatever they can under less than ideal circumstances. It's not the effect of your argument to deny the highest of care to individuals in an emergency situation, and isn't the purpose of the EMS, of those services, to render the best service possible? But wouldn't the effect of your argument mean, okay, doctors are banned, you know, because they're not going to get the immunity. So we're just going to have to rely on the technicians and the nurses and, you know, those who are not as skilled as the physicians. Is that the result that you all are trying to secure? I believe it's the exact opposite. I believe if doctors are immune, are provided immunity just because they're flight physicians, that's going to lessen the standard of care. That's going to not require them to do what they would have needed to do if they were in the emergency room. If they were in the emergency room providing treatment to a patient in these stressful and difficult times, which is what emergency rooms often consist of, they would be held to a standard of care. That same standard of care should be required when they're in the other hospital, the hospital where the patient is being transported from, or when they're in their own hospital. The allegations of negligence against Dr. Strain were not only regarding those acts and omissions that he conducted at the Hospital of Providence, they also included his acts and omissions while he was in the University of Chicago on his way to the PICU. No, I don't think it does. I think the negligence that's alleged against him is failing to manage and treat Donnell's abnormally high PCO2 levels prior to his transfer, perform aggressive asthma management and treatment prior to his transfer, address the worsening respiratory failure prior to his transfer, recognize the improper paralytics administered in the emergency room prior to his transfer, and provide proper ventilator management prior to and during his transfer. Are there any allegations in that complaint that he committed an act of malpractice once he got to the University of Chicago? I believe that during his transfer would include going from the Bay at the University of Chicago to the PICU. Council. Nice try, but there's no allegation that anything happened between that Bay. The allegations are all what he did at Providence and what happened in the management. And how do you get around Washington versus the City of Evanston? In this particular case, in that case, the Dr. Colpacan was immune under B because Dr. Aguilar asked her to supervise the paramedics. And it was uncontested. The paramedics were qualified to act under the act. And because she was told to supervise her, there's no question she was engaged in the supervision of medical services. Now, when a physician supervises the acts of nurses or paramedics, they're held to the standard of care of a physician, aren't they? Not the standard of care of a paramedic or a nurse. So you're immunizing a physician even though there may be an allegation that that physician breached their own standard of care. Subsection B of the immunity provision specifically states supervision. It says no person including any private or governmental organization or institution that administers, sponsors, authorizes, supports, finances, educates, or supervises the functions of EMS personnel. So it specifically says supervises. In this case, Dr. Strain did not supervise. Well, no, but under A, he was authorized to act, was he not? He was authorized because he was told to act by the EMS director. I'm having difficulty with the argument because there's no question that the nurse is immunized. There's no question the driver of the ambulance is immunized. And there's no question that the whole reason for this transport is because you have a horribly ill child. He has to get to a pediatric intensive care unit and yet you're willing to concede the immunization of the nurse and the driver and not the doctor who's caring for him? Can you imagine what this would be like if they would have sent that ambulance without a doctor? The kid never would have made it to the hospital. I mean, I can't envision how this could have happened without sending a doctor. And if he's sent by the director of the entire system, why isn't he authorized to act? As I stated before, we're not... You're looking at a person, right? Not the certified, the authorized. You're looking at a person and saying a doctor does not fall within that definition, is that correct? Exactly. We're not proposing that the doctor not be sent on an ambulance to transport a child who's in need. In need of emergency treatment. We're simply arguing that that doctor should be held to the same standard that he would be held if he were practicing emergency medicine as he was trained to do so in medical school. That he would do in the emergency room. He was in an emergency room at Providence. He was not in an ambulance. It was not driving. There's no evidence that there was... What is the point of providing the immunity to anyone? Why provide immunity, you know, to Nurse Campbell? Or the ambulance driver or anyone else? Why? The purpose of immunity, as I've stated before, is that we should not... As the Chief of the Legislature has stated before, that we should not allow... We should not have these EMS personnel practicing under these difficult situations and scared of whether or not they're going to have civil liability for their actions. Does that apply? Does that not apply to the physicians? Because physicians are trained in medical school, emergency room physicians are trained specifically for emergency situations. They are told what to do in these situations. They have more training than nurses. They're not like EMS and EMTs and paramedics. They have more training and experience and that's why we have this professional negligence in the first place. Because they're held to a standard of care that EMS personnel wouldn't be held to. But nurses still have a standard of care and if they breach it, they can be sued. So why do we give them immunity but not the doctor? Their standard of care is less than a doctor's standard of care. What difference does that make? You're only immunizing them for whatever it is they do. And yeah, a doctor has a higher standard of care. A nurse has a lower standard of care, I guess. But the point of the matter is, why give immunity to anybody? If your argument is, well, if they violate their standard of care, they should be liable. Why should it be any different for a doctor than it is for a nurse? Merely because they're highly educated? Exactly. It's because they're specially trained in these situations to act to a certain standard. They are more knowledgeable about these conditions and what they should do. And this is the same as if they were in the ER. In the ER, emergency room physicians are held to a higher standard. Why do we give immunity in Washington? Merely because of supervision? Because the word supervision is there? Exactly. I think the difference between this case and Washington is that the doctor didn't act. He was not acting as he did, how he was specially trained to perform certain medical tasks. If that were the case, there would be no immunity. That's a circular argument. There would be no immunity if the only thing you immunized him from was acting up to his standard of care. Then you don't need immunity because he didn't do anything wrong. It just doesn't come together here. The doctor in Washington was supervising an EMS personnel as defined by the Act. And supervision is specifically stated in the Act. We understand that in the Act it says any person authorized to act in an emergency is immunized. Any person. So I guess my argument then is that the any person does not include emergency room physicians. Okay, if that's your argument, your argument rests on the proposition that doctors are not any person within the meaning of subsection A. Is that the argument? Yes. I don't believe that it does justice to just look at section 3.150 for immunity from civil liability. Because there are other parts of the Act that point to the fact that doctors not being EMS personnel who are not covered by the EMS Act. Dr. Strain was not an EMS personnel and he was not covered by the Act. Although he was authorized to act by Dr. Beck through Dr. Blumen, Dr. Strain performed emergency medical treatment to Dr. Beck. And Dr. Beck was not covered by the Act. Okay, counsel, thank you. Is he a person authorized to act under the Act? Absolutely. Why? Absolutely he is. Other than the fact that Dr. Beck told him to do it. Or Dr. Blumen. Dr. Blumen has the EMS medical directors designee, page 601. In addition to all the reasons that we've discussed, I have an additional reason why the EMS Act itself has a scope of services under section 3.10. And those scope of services, if you look at Dr. Strain's care that he provided as a transfer physician, he falls into almost every single one of them. The most obvious one listed in 3.10 is inter-hospital care. So if we're looking for a different part of the Act that lists the type of activities that any person can do, we must look at 3.10. And Dr. Strain and his entire UCAN team were engaged in inter-hospital transfer care. That's specifically listed in 3.10. So that would be my answer. Again, plaintiff really wants to pigeonhole this case into the following proposition. If you're not a listed EMS personnel, you don't get A immunity, you don't get B immunity, you don't get any immunity. At least A. The point is, and I agree with Justice Hall, A could have, if they wanted to, limit any person by EMS personnel and referred to the defined term in the statute and said, look there for any person. Instead of putting any person, they could have put any EMS personnel or any personnel as defined under this section, incorporated by reference. They did not do that. In fact, in Section B, when they do use the phraseology EMS personnel, what we have is the same legislature in two different portions of the Act using different words. Obviously, the canons of construction, I think, would teach us that they intended for them to have different meanings. Any person is much broader than EMS personnel. The Act contemplates actors who are not just EMTs or paramedics. Plaintiff conceded a lot, I think, but one of the most telling from my perspective and sort of from a fairness perspective is that she agrees, or plaintiff agrees, that the EMS medical director has immunity. And nobody would disagree with that, I suppose, but what a sort of ironic and unfair situation where the gentleman or the woman who acts as an EMS medical director tells Dr. String, get on a helicopter, get in an ambulance, go out there and bring this boy back to us. The director would get immunity, but the guy who goes out in the field and actually performs emergency care doesn't. Well, her argument would be the director didn't do anything. He didn't run your medical treatment. Certainly. So there's no medical malpractice case against him. Right. But I suppose there is a section in the EMS Act that has EMS medical director immunity in it. So I have no further comments, and I rest on my arguments. Counsel, thank you. The matter will be taken under advisement. Court stands adjourned.